# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT WILLIAM MAWSON, SR,** :

    **Plaintiff,** : CIVIL ACTION NO. 3:16-0400

    v. : (JUDGE MANNION)

**PITTSTON CITY POLICE DEPARTMENT,** *et al.,* :

    **Defendant** :

## MEMORANDUM

Presently before the court is a Report & Recommendation from Chief Magistrate Judge Schwab. (Doc. 98). In his second amended complaint, Plaintiff Robert William Mawson, Sr. ("Mawson") claims First, Fourth, and Fourteenth Amendment violations against defendants Pittston City police Department, Officer Dion Ferandes, ("Ferandes"), Officer Sam DeSimone, ("DeSimone"), Officer Kyle Schmosic, ("Schmosic"), and Chief Robert Powers, ("Powers") (collectively, "defendants"), concerning two traffic stops and the impoundment of his truck. (Doc. 57). Judge Schwab addresses the defendants' motion to dismiss Mawson's second amended complaint, (Doc. 65), Mawson's motions for leave to file a third amended complaint, (Doc. 86 & 89), and Mawson's motion for a preliminary injunction, (Doc. 21). Because this court agrees with Chief Judge Schwab's sound reasoning, the court will adopt her Report and Recommendation in full.

## I. FACTUAL BACKGROUND

In light of the fact the court is writing for the parties involved, the court will address only those facts necessary to address the objections to Chief Judge Schwab's Report & Recommendation.

Mawson's second amended complaint concerns two incidents, the first on February 16, 2016 and the second on June 11, 2016. (Doc. 57).

On February 16, 2016, Fernandes and DeSimone allegedly stopped Mawson for purportedly going through a stop sign. *Id*. at ¶17. Mawson alleges the police did not have probable cause to stop him. *Id*. at ¶15.[1]

Mawson alleges he was driving on Swallow Street when he noticed police cars speeding up behind him. *Id*. at ¶16. Upon noticing the police, he turned onto Vine Street and pulled over in a safe spot. *Id*. At this point, he called his mother and told her "it[']s happening again." *Id*.

After momentarily waiting in his truck, Mawson then got out, walked to the back of the truck, put his arms out to his sides, and said "Really!" *Id*. at ¶17. Fernandes then got out of his police vehicle and said "that[']s a good way to get yourself shot Mawson!" and "get back in your vehicle, you get out again I will smash you into the ground!" *Id*. Mawson complied and got back in his truck. *Id*.

There were multiple police cars on the scene. Mawson alternatively

---

[1] Mawson's second amended complaint contains two paragraphs labeled "15." Here, the court refers to the paragraph on page 6.

claims there were three (3) police vehicles, (*Id.* at ¶17 and ¶20), and four (4) police vehicles, (*Id.* at ¶19). Either way, Mawson contends the police cars blocked him in. *Id.* at ¶17.

Fernandes then approached Mawson's door and told him his license was suspended. *Id.* Mawson explained that he had a "DL-20" that always came back as suspended and proceeded to show Fernandes that his truck was legally registered and insured. *Id.* Mawson admits his license came back as suspended "because it is a suspended workers license/probationary license." *Id.* at ¶29.

Fernandes told Mawson he had been pulled over for failing to stop at a stop sign. *Id.* at ¶17. Mawson then called Fernandes a liar and an argument ensued. *Id.* Mawson also claims Fernandes falsely accused him of spinning his tires. *Id.* He attached an affidavit from Chris Ribaudo supporting this contention. *Id.*, Ex. 3.

Fernandes then went to the back of the truck, discussed the situation with DeSimone, returned to Mawson, and explained they were impounding his truck. *Id.* at ¶17. Mawson explained to Fernandes that his mother was already on the way to pick up the truck. *Id.* Fernandes replied: "Your mother!" *Id.*

The officers then allowed Mawson to get out of his truck. Mawson proceeded to approach DeSimone and say "I guess nothing changed." *Id.* at ¶21. DeSimone replied: "Nope." *Id.* Mawson then said "I sett[le]d out of

3

court with you, what more can I do for peace[?]" *Id*. DeSimone replied: "It is what it is." *Id*.

Mawson's mother then arrived. *Id*. at ¶22. Mawson removed all of his personal belongings from the truck and placed them in his mother's trunk. *Id*. Mawson was not issued a ticket but the truck was impounded. *Id*. He was instructed that he could pick up his truck the next day if he showed a driver's license. *Id*. He was charged towing and impoundment fees when he picked up the truck the next day. *Id*.

Mawson alleges his truck was legally and safely parked, that is was not impeding traffic, and that his mother, a licensed driver, was on the scene and prepared to drive his truck. *Id*. The officers refused to allow Mawson to leave the car legally parked or to have his mother legally drive the truck away. *Id*. Thus, he contends the impoundment was unreasonable and intended to cause hardship and expense. *Id*.

Although Mawson did not receive a ticket at the scene, as mentioned above, the police department sent a constable on April 9, 2016, which was 22 days after the stop and the day after he filed his application to proceed *in forma pauperis* in this case. *Id*. at ¶32. The constable informed Mawson's mother that he had been served a hearing notice but failed to appear, and that a warrant for his arrest would be issued if he failed to appear at the police station within two days. *Id*. Mawson contends he was never issued a ticket or a notice to appear. *Id*. He also contends that the police sent the constable

4

only after he complained about the stop to Chief Powers. *Id*. Mawson was charged with traffic violations, and claims he was found not guilty of these charges.[2]

Mawson alleges the stop was in retaliation for his prior civil action against the police department, *Mawson v. Pittston Police Dept.*, 3:13-cv-1714 (M.D Pa.). *Id*. at ¶33. He alleges the settlement check for that action was sent out on the same day he was stopped by Fernandes and DeSimone, February 16, 2016. *Id*. at ¶32.

Mawson also claims that this stop was his third incident with the police department, indicating a pattern of police following him and his mother. *Id*. Further, he claims the police frequently drive by his mother's house. *Id*. at ¶18.

Mawson reported this alleged behavior to Powers via voice mail messages and certified letters on March 4, 2016, and April 4, 2016. Mawson claims Powers took no action. *Id*. He also claims Powers was aware of prior incidents of illegal seizures involving DeSimone. *Id*.

Mawson also claims the police stopped him a second time, on June 11, 2016 at approximately 10:30 p.m. Mawson alleges Fernandes drove through a Burger King parking lot while Mawson was eating in his car. Doc. 58, ¶4. Mawson then drove across the street to a gas station parking lot and

---

[2] It is unclear to which charges Mawson refers. See Judge Schwab's footnote 4 on page 6 of her recommendation.

Fernandes continued to watch him. *Id.* Mawson decided to relocate because he felt uncomfortable in light of his history with the police department. *Id.* at ¶5. He claims he exited the gas station cautiously, looked both ways, and was not driving recklessly. *Id.* at ¶7. Upon exiting the gas station, Schmosic's car immediately gave pursuit, at which time Mawson pulled over into a nearby Turkey Hill and parked under a gas pump canopy. *Id.* at ¶8-9.

Mawson exited his car while Schmosic was running a check on Mawson's license plate. *Id.* at ¶10. Schmosic then advised Mawson to get back in his truck and Mawson complied. *Id.* at ¶11. Fernandes arrived shortly after and yelled to Mawson to spell his name right in the next civil suit. *Id.* at ¶12. Mawson called a family member to come to the scene. *Id.*

The officers then issued traffic citations, which Mawson claims were falsified. *Id.*, Ex. 1. Mawson contends that it would have been impossible for Schmosic to determine whether Mawson was wearing his seatbelt due to the factory tinting on the rear window of his truck. *Id.*

Mawson also alleged Schmosic lied when stating that Mawson failed to use caution when pulling out of the gas station. *Id.* Similar to the first stop, Mawson alleges he was stopped in retaliation for the exercise of his constitutional rights. *Id.* That is, Mawson had previously filed a civil lawsuit against Schmosic in which he alleged Schmosic lied about Mawson entering his house with a firearm. *Id.* Mawson claims he now fears for his life, as the officers' behavior has grown increasingly "brazen" toward Mawson and his

mother. *Id.*

## II. PROCEDURAL BACKGROUND

On March 10, 2016, Mawson filed a complaint entitled "Petition for Restraining Order." (Doc. 1). On August 12, 2016, Mawson filed his second amended complaint.[3] Mawson argues the impoundment of his truck constituted a violation of: (1) his First Amendment right to not be retaliated against; (2) his Fourth Amendment right to be free from unreasonable seizures; (3) his due process rights; (4) the Pennsylvania Constitution; and (5) various federal statutes.[4]

On June 15, 2016, Mawson filed a motion for preliminary injunction against the defendants. (Doc. 21). On August 26, 2016, the defendants filed a motion to dismiss Mawson's second amended complaint in which they assert eight (8) grounds for dismissal. (Doc. 65). Mawson also filed two motions for leave to file a third amended complaint. (Doc. 86 & 89).

On January 20, 2017, Chief Judge Schwab issued a report recommending this court: (1) grant in part and deny in part the defendants' motion to dismiss, (Doc. 65); (2) deny Mawson's motions for leave to file a third amended complaint, (Docs. 86 & 89); and (3) deny Mawson's motion for

---

[3] Mawson filed two separate documents: (1) "2nd Amended Complaint," (Doc. 57); and (2) "Plaintiff[']s 'Separate' Incident Complaint." The court will refer to them, collectively, as the "second amended complaint."

[4] Specifically, 42 U.S.C. §1414, 42 U.S.C. §2000m, 42 U.S.C. §3789(c), 18 U.S.C. §241, and 18 U.S.C. §242.

7

a preliminary injunction, (Doc. 21). (Doc. 98). Also on January 20, 2017, Mawson filed a motion for evidentiary hearing. (Doc. 101).[5]

On February 3, 2017, the defendants filed objections to Judge Schwab's recommendations regarding the motion to dismiss, (Doc. 104), along with a corresponding brief in support, (Doc. 105).

## III. STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469

---

[5] Mawson titled this motion: "Motion for Evidential Hearing/Modified Order /Protective Order."

8

(M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429, U.S. 97, 106 (1976)). "*[P]ro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc. 704 F.3d 239, 245 (3d Cir. 2013) (citing Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996)).

**IV. DISCUSSION**

The court will address only those of Judge Schwab's findings to which the parties object. The defendants advance four (4) objections to Judge Schwab's report: (1) "Defendants raised qualified immunity;" (2) "Plaintiff does not show a lack of reasonable suspicion for the stops;" (3) "Towing Plaintiff's truck did not violate the Fourth Amendment;" and (4) "Chief Powers did not harm Plaintiff." (Doc. 105). The court has satisfied itself that there is no clear error on the face of the record regarding the remaining issues

addressed in Judge Schwab's report.

## A. Qualified Immunity

The defendants argue this court should review qualified immunity so as not to force the defendants to raise the issue on a motion for judgment on the pleadings. (Doc. 105, p. 2). Judge Schwab concluded the defendants did not sufficiently raise a qualified immunity argument because the section in their brief concerning qualified immunity contains only a summary of legal standard and does not include any argument. (Doc. 98, p. 43). The plaintiff argues "there is no qualified immunity for a case that is a[t] the edge of proving retaliatory action, that this case is indicating a case of intentional harm, [and] that the officers are not entitled to immunity." (Doc. 108, p. 3).

The court agrees with Judge Schwab, and therefore does not reach the issue of qualified immunity for want of sufficient briefing on the issue. *See* Latour v. McCullar, No. CV 13-1631, 2016 WL 3999838, at *17 n.15 (W.D. Pa. July 26, 2016) ("In the absence of an explicit request for qualified immunity with respect to this claim and sufficient briefing on the issue, the court declines to rule at this time on whether [the defendant] is entitled to qualified immunity from [the plaintiff]'s person-based Fourth Amendment claim under §1983"). In their brief in support of the motion to dismiss, the plaintiffs allot nearly three pages to a bald recitation of the law regarding qualified immunity. (Doc. 70, pp. 3-6). Nowhere in this section, nor in their brief in general, do the plaintiffs present a single sentence of argument or

10

even a contention that they are entitled to qualified immunity regarding any of Mawson's claims. Thus, the court must agree with Judge Schwab that the defendants fail to sufficiently raise a qualified immunity argument.

### B. Reasonable Suspicion for Stops

The defendants argue Mawson failed to establish lack of reasonable suspicion for both stops at issue. (Doc. 105, p. 2). The defendants argue Judge Schwab mistakenly credits Mawson's allegation "that he was not breaking any laws and that the defendants stopped him merely to harass him because of his prior civil action." *Id.* (citing Doc. 98, p. 21). They argue Mawson's allegations are merely legal conclusions that the court is not bound to accept under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). (Doc. 105, p. 4). Specifically, defendants contend Judge Schwab "should have found reasonable suspicion to stop Plaintiff because he alleges that the officers recognized him—an unlicensed driver—before stopping him on both occasions. (Doc. 105, p. 5). The defendants argue that "Plaintiff does not allege that he was wearing a seatbelt or deny entering a road without stopping." *Id.*

Judge Schwab found that in construing the facts in the light most favorable to Mawson, as required when considering a motion to dismiss,[6]

---

[6] In reviewing a motion to dismiss, the court must "accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." Mayer v.

11

Mawson asserted a Fourth Amendment claim upon which relief could be granted against those officers involved in the stop. (Doc. 98, p. 21). Specifically, Judge Schwab highlights Mawson's claim that he was not breaking any laws and was pulled over by the police in an attempt to harass him for previously filing a civil action. *Id.* The court agrees that Mawson sufficiently asserted a claim for which relief could be granted.

As previously stated, Mawson states he was not breaking any laws when he was pulled over, and that he was pulled over as retribution for a previous civil action he had filed against the police department. Indeed, Fernandes claimed the reason for the first stop was that Mawson had failed to stop at a stop sign. Mawson also contends he did not spin his tires as the police stated on the scene, and he attached an affidavit from Chris Ribaudo to this effect. It was only after extended discussion between Mawson and the officers at the scene that Desimone alerted Mawson his license had come back as suspended. Taken in the light most favorable to Mawson, the facts alleged are sufficient to establish the potential lack of reasonable suspicion.

**C. Seizure of the Truck**

The defendants argue the tow did not violate the Fourth Amendment because towing Mawson's truck was reasonable. (Doc. 105, p. 5). The defendants cite a series of cases outside of the Third Circuit to support the

---

Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

proposition that "it is reasonable to tow vehicles in parking lots because the vehicles are a nuisance and at risk for theft and vandalism. *Id*. In the alternative, the defendants argue the are entitled to qualified immunity on this claim because the law is not "clearly established" regarding whether the officers were required to allow Mawson's mother to drive the car away rather than having it impounded. (Doc. 105, p. 7-8).

Chief Judge Schwab found that Mawson pled sufficient facts from which is could be reasonably inferred that the seizure of his truck was unreasonable. (Doc. 98, p. 31). Judge Schwab acknowledged that Mawson's license came back as suspended, but declined to dismiss Mawson's Fourth Amendment claims against Officers Fernandes and DeSimone[7] because the vehicle was legally parked, not at particular risk to theft and vandalism, and that his mother was on the scene and capable of driving the vehicle. *Id.* In doing so, Judge Schwab finds that while the police may not have an affirmative duty to permit a vehicle owner to make alternative arrangements to towing, the presence of a licensed driver at the scene who is capable of driving the car away is a relevant factor in making a determination on the

---

[7]Judge Schwab did, however, conclude that Mawson failed to allege sufficient facts from which it could reasonably be inferred that Office Schmosic or Chief Powers were personally involved in the seizure of the truck. Thus, she recommended the court grant the motion to dismiss with respect to the Fourth Amendment claims against Schmosic and Powers. (Doc. 98, pp. 31-32).

reasonableness of an impoundment. *Id*. at 30.

The court again agrees with Judge Schwab. The defendants misconstrue the applicable case law by focusing on the undisputed fact that police are not required to allow a defendant an "alternative method of securing the vehicle." This misses the point. The issue presently before the court is whether Mawson has presented sufficient facts from which it could be reasonably inferred that the seizure of his truck was unreasonable. In analyzing the towing policy applicable to the local police, a Judge in the Western District of Pennsylvania found that an "arrested person may give his permission to another person to move his vehicle," and that "[i]f Plaintiff did indeed request to have another individual come to retrieve his car, then a jury could find that the tow, and attendant inventory search, were unnecessary and illegal." Jackson v. City of Pittsburgh, 688 F.Supp.2d 379, 390 (W.D. Pa. 2010). Mawson's mother was on the scene and willing to take the car, the car was in no discernible risk of vandalism or theft, and the care was legally parked. Viewed in the light most favorable to Mawson, there are sufficient facts to infer the search was unreasonable such that dismissal at this early stage is unwarranted.

As to qualified immunity, the court will not address this issue at this time. As discussed previously, the defendants failed to raise this issue prior to their opposition to Judge Schwab's report and recommendation absent bald recitations of law unaccompanied by argument. Thus, the court does not

address qualified immunity for want of sufficient briefing on the issue.

**D. Chief Powers**

The defendants argue the claim against Chief Powers should be dismissed because Mawson is unable to meet the high standard of supervisory liability. (Doc. 105, p. 10). That is, the plaintiff must show that Chief Powers caused the violation with "practices . . . [that are] so permanent and well settled as to constitute a custom or usage with the force of law." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The defendants simply state that two traffic stops do not meet this burden. *Id.*

Judge Schwab acknowledges "[i]t is a close question" whether Mawson states a claim upon which relief can be granted against Chief Powers based on the stop. (Doc. 98, p. 22). In determining that it can reasonably be inferred that Chief Powers was "personally involved through his purported knowledge and acquiescence in violations committed by his subordinates[,]" Judge Schwab cites Mawson's allegations that: there were three separate "incidents" between the Pittston City Police and Mawson and his mother; there was an "ongoing pattern of officers following [Mawson] and his mother;" Mawson called Powers, reported the incidents, and requested that he take action; and he sent Powers certified letters on March 4, 2016 and April 4, 2016. (Doc. 98, p. 23 (citing Doc. 57, pp. 40-44)).

This court agrees that this is indeed a close question. Reviewing this case *de novo,* the court again concurs with Judge Schwab's sound

15

reasoning. Viewing the facts in the light most favorable to Mawson, Chief Powers may have been aware of the alleged ongoing pattern of harassment visited upon Mawson by the Pittston police officers. Specifically, Mawson alleges Powers was aware of similar prior instances of illegal seizures involving Officer DeSimone. Mawson also alleges that he reported harassment from Pittston police officers to Chief Powers and that these reports were ignored. Considered in the light most favorable to Mawson, these facts are sufficient to reasonably infer that Chief Powers was personally involved through his alleged awareness and failure to respond to the violations of officers working under his command.

**V. CONCLUSION**

For the reasons articulated above, the court adopts the sound reasoning of Chief Magistrate Judge Schwab as articulated in her Report and Recommendation. First, the court GRANTS in part and DENIES in part the defendants' motion to dismiss the second amended complaint. (Doc. 65). Specifically regarding this motion the court dismisses: (1) all claims against the Pittston City Police Department; (2) Mawson's due process claims as well as his claims based on the Pennsylvania Constitution, 18 U.S.C. §§241 & 242, and 42 U.S.C. §1414, §2000m, and §1789(c) for all defendants; (3) the Fourth Amendment claims against Schmosic regarding the February stop, and against DeSimone regarding the June stop; and (4) the Fourth

Amendment claims against Schmosic and Powers based on the impoundment of the truck. The court denies the motion to dismiss regarding the remaining claims.

The court also denies Mawson's motion for a preliminary injunction. (Doc. 21). The court further denies Mawson's motions for leave to amend (Docs. 86 & 89).

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 28, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0400-02.wpd