## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT WILLIAM MAWSON, SR.,** :

        **Plaintiff**       :       **CIVIL ACTION NO. 3:16-400**

      **v.**              :          **(MANNION, D.J.)**

**PITTSTON CITY POLICE**     :
**DEPARTMENT, *et at.,***

                    :

        **Defendants**

## <u>MEMORANDUM</u>

Presently before the court is the report and recommendation ("Report") of Judge Schwab, (Doc. 191), which recommends that a motion for summary judgment, (Doc. 157), filed by defendants Officer Dion Fernandes ("Officer Fernandes"), Officer Samuel DeSimone ("Officer DeSimone"), Officer Kyle Shumosic ("Officer Shumosic"), and Chief Robert Powers ("Chief Powers"), (collectively "Defendants"), be granted as to all claims except two. Namely, the Report recommends that summary judgment be denied as to the Fourth Amendment claim against Officer Fernandes arising from the February 2016 traffic stop ("February Stop"), and the Fourth Amendment claim against Officer Shumosic arising from the June 2016 traffic stop ("June Stop"). The plaintiff Robert William Mawson, Sr. ("Mawson") filed a "Notice of Appeal,"

which this court will construe as objections to the Report. (Doc. 193). Defendants also filed objections to the Report. (Doc. 195).

Based upon the court's review, the court will **ADOPT in part** and **NOT ADOPT in part** Judge Schwab's Report. Specifically, the Report is adopted in all respects except with regard to the recommendation that summary judgment be denied on Mawson's Fourth Amendment claim against Officer Shumosic arising from the June Stop in light of newly-identified statutory authority cited by Defendants in their objections.

## I.      STANDARD

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *U.S. v. Raddatz*, 447 U.S. 667, 676 (1980)).

Even where no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." Fed.R.Civ.P. 72(b) advisory committee notes; *see also* Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); M.D.Pa. Local Rule 72.31.

## II.   BACKGROUND

On March 10, 2016, Mawson initiated the instant action with a four-page complaint. (Doc. 1). His present second amended complaint, (Doc. 57), together with his "separate incident complaint," (Doc. 58), which the court is collectively construing as his second amended complaint, alleges violations of his First and Fourth Amendment rights. Mawson's claims stem from two separate incidents. The first, the February Stop, occurred on February 16, 2016, wherein Mawson was stopped by Officers Fernandes and DeSimone for allegedly going through stop signs, after which is truck was impounded when Mawson's driver's license was found to be suspended. Mawson was

issued citations for driving on a suspended license and failure to stop at a stop sign.

The second, the June Stop, occurred on June 11, 2016. Mawson contends this incident began when Officer Fernandes drove through a Burger King parking lot and saw Mawson in his truck eating, at which point Mawson became uncomfortable and pulled across the street and parked in a gas station parking lot. Once there, Mawson claims he noticed Officer Shumosic watching him, exited the gas station parking lot, and was immediately stopped by Officer Shumosic. Officer Shumosic called for backup and Officer Fernandes arrived on scene but stayed only a few minutes before being summoned to another call. Mawson was cited for careless driving, failure to wear a seatbelt, and failing to yield when entering a roadway. At summary trial, a magisterial district court found Mawson guilty of all charges except failing to wear a seatbelt. Mawson appealed, and the Luzerne County Court of Common Pleas found him not guilty of both charges.

On August 26, 2016, Defendants filed a motion to dismiss, (Doc. 65), and, on September 28, 2017, this court adopted a report and recommendation from Judge Schwab and dismissed a number of Mawson's

claims. (Doc. 114; Doc. 115). As a result, the following claims arising from the February Stop remain: (1) Fourth Amendment claims against Officers DeSimone and Fernandes and Chief Powers; (2) Fourth Amendment claims against Officers DeSimone and Fernandes based upon the impoundment of Mawson's truck; (3) First Amendment retaliation claims against Officers DeSimone and Fernandes and Chief Powers based upon the stop itself and the traffic citations Mawson received as a result; and (4) First Amendment retaliation claims against Officers DeSimone and Fernandes and Chief Powers based upon the impoundment of the truck.

Additionally, the following two claims arising from the June Stop remain, both of which are against Officers Fernandes and Shumosic and Chief Powers: (1) Fourth Amendment claims; and (2) First Amendment retaliation claims based upon the stop itself and the traffic citations Mawson received as result.

On May 30, 2019, Defendants filed the present motion for summary judgment, (Doc. 159), which was fully briefed by the parties. On March 3, 2020, Judge Schwab issued the present Report, recommending summary judgment be entered in Defendants' favor on all claims except the Fourth Amendment claims against Officer Fernandes arising from the February Stop

and the Fourth Amendment claims against Officer Shumosic arising from the June stop. (Doc. 191).

On March 10, 2020, Mawson filed his objections to the Report. (Doc. 193). In them, he makes numerous arguments, the majority of which are recitations of arguments from his second amended complaint and his opposition to the motion for summary judgment. With that being said, Mawson does raise what the court can identify as six distinct objections.[1]

---

[1] On March 13, 2020, Mawson filed a letter addressed to Judge Schwab in which he details another alleged incident involving Defendants: Mawson contends that on March 10, 2020, he was at his friend Chris Ribaudo's house and Officer Fernandes drove slowly down an alleyway that faced Ribaudo's backyard and stared at them. (Doc. 194). The court declines to consider these contentions as they are unrelated to the issues at bar insofar as they arise from an entirely separate transaction and, as Judge Schwab noted in striking similar documents filed by Mawson, he has had ample opportunities to submit evidence. *See* Doc. 190. If Mawson wishes to bring additional claims against Defendants based upon the March 11, 2020 incident, he may file a separate complaint related to that incident. *See Boretsky v. Governor of New Jersey*, 433 Fed.App'x 73, 77 (3d Cir. 2011).

Relatedly, on September 4, 2020, Mawson filed a letter alleging, from what the court can gather, that he read an article in a newspaper reporting that a Pittston officer slashed five car tires. (Doc. 206). Mawson indicates that, despite the efforts of the mayor and police chief to hide the police officer's name, he believes it was one of the defendants. As noted, if Mawson wishes to bring additional unrelated claims he may do so in a separate complaint.

On March 17, 2020, Defendants filed their objections to the Report, as well as a brief in support, arguing that their motion for summary judgment should be granted in entirety. (Doc. 195; Doc. 196). Defendants also filed a brief in opposition to Mawson's objections. (Doc. 197).

On April 2, 2020, Mawson filed a response to Defendants' brief in opposition to his objections.[2] (Doc. 199). On April 8, 2020, Mawson filed an additional document entitled "Plaintiff[']s Reply Response to Defendants['] Objection[s] to the Court's Report & Recommendation," which, in large part, reiterates his arguments from his other filings, including his earlier response to Defendants' brief. (Doc. 201).

---

[2] On April 6, 2020, Mawson filed a document entitled, "Plaintiff[']s Civil Suit Injury Claims," in which he appears to make an additional claim of emotional distress and seeks "$800.000." (Doc. 200). As with his March 13, 2020 letter, the court declines to consider these new claims. *See supra* note 1.

On April 14, 2020, Mawson filed a letter addressed to the undersigned, indicating that he is in the process of finding an attorney to represent him in the event the matter goes to trial. (Doc. 202). Mawson also attached a document reiterating his previous arguments and included annotated pages of the transcript from the June 23, 2016 hearing in this case. (Doc. 203).

### III.    DISCUSSION

#### a. *Mawson's Objections*

First, Mawson objects to the Report's conclusion that, "although Mawson's mother was on the scene at some point, from the testimony at the preliminary injunction hearing, we infer that she was not on the scene at the time the [D]efendants called a tow truck." (Doc. 191, at 50). Mawson argues that his mother was in fact at the scene before the tow truck was called and Officer Fernandes declined to allow his mother to take his vehicle. Mawson also disagrees that the area where his vehicle was parked was private property.

The pertinent portion of the Report quotes the following testimony from Mawson:

> I called my mother immediately, within a few seconds, and I said, ma, I said, it's happened again. I said, please come to - - my mother is sickly with cancer. . . . So my mother comes, she pulls up, and I told her, you know, I might need her to take - - Fernandes and Officer DeSimone was [sic] fixed on impound.

(Doc. 158-1, at 16). The Report also quotes Officer Fernandes's testimony explaining what happened after Mawson's license came back as suspended:

> After that, I informed him his truck was on private property, which is city-owned property. We called a tow truck, which we call their impound service. They

- 8 -

> respond to the location. He had a bag of -- I remember he had some belongings in the truck. I think he said he was coming from the store. I think he had a bag of dog food, a large bag of dog food, and some other belongings. We offered Mr. Mawson a courtesy transport to his house at the rear of 164 Mill Street. And we did offer, also to take his packages and stuff, but he refused that, and his mom came and took him home.

(Doc. 191, at 50-51).

Although the court agrees with Mawson that the above-quoted testimony is not particularly clear with regard to when Mawson's mother was called, the court will nevertheless overrule his objection because the dispute over this fact is immaterial in light of court's finding that the Defendants are entitled to qualified immunity on this claim.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (internal quotation marks omitted) (emphasis added). In analyzing whether the doctrine applies, the court should ask "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." *Id.*

(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts are permitted to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

> The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. On the other hand, if the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Kelly*, 622 F.3d at 254.

Here, because the unlawfulness of the Defendants' conduct in electing to tow the vehicle was not clearly established, the court agrees with the Report's overall conclusion that the Defendants are entitled to qualified immunity with respect to the impoundment of the truck. This is because there is no clear binding precedent which indicates that a seizure is *per se* unreasonable under the Fourth Amendment where officer chooses to impound a vehicle despite there being another licensed driver on scene.

As the Report notes, "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must

be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *D.C. v. Wesby*, 138 S.Ct. 577, 589-90 (2018) (internal quotation marks and citations omitted). Significantly, "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

In *United States v. Smith*, 522 F.3d 305 (3d Cir. 2008), the Third Circuit set forth its decision that the applicable standard for determining whether an impoundment comports with the Fourth Amendment is reasonableness. However, the court did not go so far as to hold that it is unreasonable to impound a vehicle despite there being other options available, such as permitting another licensed driver to take the vehicle off the premises.

Accordingly, Defendants are entitled to qualified immunity with respect to this claim because a reasonable person in Officer Fernandes's position at the relevant time could have believed that impounding the vehicle comported with recognized legal standards. *See Kelly*, 622 F.3d at 253. Therefore, Mawson's first objection is **OVERRULED,** and the court adopts the Report's recommendation that summary judgment be entered in favor of Defendants' on the Fourth Amendment claim regarding the impoundment of the truck.

- 11 -

Relatedly, the court will overrule Mawson's objection to the Report's conclusion that Mawson failed to support his suggestion that the parking lot where his vehicle was impounded did not have any no-parking signs posted. In a footnote, the Report observes that, while Mawson submitted photographs of the parking lot at issue, the photographs do not depict the entire lot and, further, there appeared to be a sign on a telephone poll facing the opposite direction of the camera. (Doc. 191, at 47-48 n.30). In response, Mawson states that he "went back and took several more photos and like he said 'no' signs posted and shows [sic] the other side of the sign the court said it 'may' be a no parking sign: see Ex-A- it states 'caution children.'" (Doc. 193-1, at 2).

Mawson has attached the photographs to his brief, and the "Caution Children" sign depicted does appear to be the same one referenced in the Report. (Doc. 193-1, at 18-21). Nevertheless, the court concludes that the contents of this sign are immaterial with respect to the court's conclusion that Defendants are entitled to qualified immunity as to the impoundment. Whether or not the parking lot had "no parking" signs posted does not change the fact that, at the time Mawson's vehicle was impounded, the law was unsettled with regard to whether impounding the vehicle under the

circumstances violated the Fourth Amendment and, therefore, Defendants are entitled to qualified immunity. Accordingly, this objection is **OVERRULED**.

Next, Mawson argues Officer Fernandes knew Mawson's identity immediately upon stopping him during the February Stop. Mawson cites the following testimony from Officer Fernandes under questioning by defense counsel:

> Q. At that point [when the vehicle was stopped] did
> you recognize the person getting out of the car?
> A. Once he exited the truck, yes.

(Doc. 37, at 64).

Relatedly, Mawson argues that the "court may have over looked [sic] that [a] casual connection" existed between the date of the settlement check and the February Stop. According to Mawson, the February Stop occurred on the same date that a settlement check was mailed to him from a prior suit he brought against Pittston City Police Department and five of its officers. Mawson contends "there[']s just to [sic] much [evidence] to say this is not a retaliatory case." (Doc. 193-1, at 9).

In fact, the Report cites the exact testimony that Mawson references, noting that "Officer Fernandes testified . . . he only recognized that Mawson was the driver when Mawson exited the truck." (Doc. 191, at 65). Moreover,

- 13 -

the Report thoroughly set forth Mawson's contrary testimony wherein he testified that he believed Officer Fernandes recognized his truck prior to pulling him over. Judge Schwab concluded that, in construing the evidence in the light most favorable to Mawson, the court could not say "as a matter of law that Mawson's retaliation claim fails on the basis that Officer Fernandes did not know that Mawson was the driver at the time he initiated the stop." (Doc. 191, at 67). Accordingly, Judge Schwab proceeded to analyze "Mawson's evidence regarding a causal connection between the February [S]top and his prior lawsuit." (Doc. 191, at 67).

The Report considered that there was a dispute as to whether Officer Fernandes had reasonable suspicion to stop Mawson and Mawson's attempt to show an unusually suggestive temporal proximity between his prior lawsuit and the February Stop. However, the Report observed the following:

> Although Officer Fernandes testified that he knew there was a lawsuit, he denied knowing about the settlement or settlement check. Mawson speculates that Officer Fernandes must have known about the settlement check because officers talk. But speculation is not evidence, and Mawson has not presented evidence from which a reasonable factfinder could conclude that Officer Fernandes knew about the settlement or the settlement check.

(Doc. 191, at 69).

Thus, contrary to Mawson's argument, the Report plainly did not overlook the alleged causal connection between the settlement check and the February Stop. Instead, Judge Schwab aptly analyzed the evidence Mawson proffered and concluded it was insufficient to withstand summary judgment on his First Amendment retaliation claims. As Judge Schwab noted, Mawson has failed to meet his burden of showing that retaliation for his prior lawsuit was the substantial or motivating factor behind the February Stop since he cannot show that Officer Fernandes had any knowledge of the settlement or settlement check. This court agrees and therefore Mawson's objections to this portion of the Report are **OVERRULED**.

Next, Mawson argues that the Report should have addressed whether Officer Shumosic did, in fact, see whether Mawson was wearing his seatbelt during the June Stop. Mawson contends that "the issue to be decided" is whether Officer Shumosic saw his seatbelt through the rear window of his vehicle where, Mawson argues, the seat in his vehicle is low and the rear window is tinted, such that it is impossible for someone to see if the driver is wearing a seatbelt. (Doc. 193-1, at 7). Mawson also argues that the court "could find more" with regard to his belief that the gas station video shows he

did not "chirp" his tires in the manner that Officer Shumosic described. (Doc. 193-1, at 7).

The Report concludes that there is a genuine dispute as to material fact with regard to whether Officer Shumosic had reasonable suspicion to stop Mawson. The Report does not address Officer Shumosic's testimony regarding whether Mawson was wearing a seatbelt during the June Stop; however, the court notes that under questioning by Mawson, Officer Shumosic testified in the following manner:

> Q. Okay. Then why did you write me up a seatbelt, that I failed to wear a seatbelt?
> A. You could see through the back window that your seatbelt was not fastened.
> Q. It was at night. How did you figure that one out?
> A. The lights from the Turkey Hill.
> Q. Come on.

(Doc. 37, at 86).

Based upon this testimony, it is not clear when Officer Shumosic saw Mawson without the seatbelt and, therefore, it is unclear whether it informed his decision to stop Mawson. Thus, to the extent that this fact is relevant, it pertains only to whether Officer Shumosic had reasonable suspicion to stop Mawson. Notably, the Report concluded (in Mawson's favor) that there were outstanding issues of material fact on this point precluding summary

- 16 -

judgment. Namely, after thoroughly detailing what the video does and does not depict, Judge Schwab reasonably concludes that it is not so clear as to hold that Mawson did or did not "chirp" his tires in the manner that Officer Shumosic alleged, given the video is without sound. Therefore, Mawson's objection to this portion of the Report is **OVERRULED**.

Next, Mawson makes several arguments regarding Chief Powers. Initially, he appears to disagree with the Report's recommendation that summary judgment is appropriate on all claims as they relate to Chief Powers due to his lack of personal involvement in either stop. Mawson cites the following testimony from Chief Powers when asked what he instructed his officers to do when interacting with Mawson: "Just make sure that they have other officers there as witnesses to testify if there is another proceeding as far as lawsuits or traffic citations." (Doc. 37, at 89). Mawson appears to argue that this instruction is proof that Chief Powers directed others to violate the law and, in support, cites *Rode v. Dellaricprete*, 845 F.2d 1195, (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

- 17 -

As the Report notes, however, at the summary-judgment stage, Mawson is required to cite to actual evidence to support his allegations regarding Chief Powers's personal involvement. The quoted testimony does not constitute actual evidence that Chief Powers directed his officers to engage in unconstitutional conduct. There is nothing about an order directing officers to call for backup when encountering an individual known to have a contentious history with the police department that is violative of the Constitution. Moreover, the court expressly reject's Mawson's argument that such an instruction means that for all intents and purposes, "the [C]hief was at all the stops." (Doc. 193-1, at 8).[3]

Mawson also cites this testimony from Chief Powers to argue that it proves officers in the department had knowledge of the settlement or settlement check and, thus, that he has proved a causal connection for purposes of his First Amendment relational claims. Mawson is incorrect, since, as the Report aptly notes, "[i]t is not clear whether [Chief] Powers gave

---

[3] Mawson cites both *Rode*, 845 F.2d at 1207 (holding, *inter alia*, a defendant in a civil rights action must have personal involvement in the alleged wrongs and that liability cannot be based solely on *respondeat superior*), and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (holding that a municipality can be liable for failure to train its employees where there is "a deliberate indifference to the rights of its inhabitants."). While both cases generally involve §1983 actions, neither support his argument.

that instruction before or after the February [S]top." (Doc. 191, at 13 n.9). Put simply, this quote does not prove what Mawson thinks it does, since Chief Power's instruction does not equate to his officers' having knowledge of the settlement in Mawson's prior case or knowledge of the date that the settlement check was issued. Accordingly, Mawson's objections to this portion of the Report are **OVERRULED**.

Finally, Mawson disagrees with the Report to the extent he believes Judge Schwab did not address his claims that he proved Officer DeSimone lied under oath. Specifically, Mawson contends that under his questioning, Officer DeSimone initially indicated that he had no involvement in the February Stop, but that Mawson finally "pulled/pryed [sic] out [of] him, he did so in fact make [a] retalitory [sic] comment." (Doc. 193-1, at 9). As throughout his filings, Mawson emphasizes that the February Stop occurred on the same day that the settlement check from his prior lawsuit was issued.

The Report addresses the retaliatory comment that Officer DeSimone purportedly made when he arrived at the scene of the February Stop:

> [Mawson] said "I guess nothing's changed." Doc. 158-1 at 13-14. Officer DeSimone laughed and said "nope." *Id.* at 14. After Mawson said that he had settled out of court for peace, [Officer] DeSimone said "it is what it is." *Id.*

(Doc. 191, at 13-14).

Once again, the court will overrule Mawson's objection. Insofar as Mawson is arguing that the Report overlooked this comment, he is incorrect. To the extent he is arguing that the court should have found that he demonstrated Officer DeSimone lied under oath, he is also incorrect. As Mawson himself notes throughout his objections, where there is conflicting testimony,[4] it is not the court's role at this stage of litigation to resolve issues of credibility. *See Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993) ("In deciding a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial.").

Furthermore, whether or not Officer DeSimone admitted to making the alleged retaliatory comment is irrelevant where, even assuming that Officer DeSimone made the above comment as the Report does, it falls far short of proving Mawson's First Amendment retaliation claim against Officer DeSimone. This is because "Officer DeSimone did not arrive at the stop until after Mawson was stopped and he was not involved in issuing the citations."

---

[4] It is not clear that there is a conflict of testimony given that, when asked by Mawson whether he made the comment, Officer DeSimone testified, "I don't recall. I may have." (Doc. 158-1, at 78).

- 20 -

(Doc. 191, at 63). Accordingly, the entry of summary judgment in favor of Officer DeSimone on Mawson's First Amendment retaliation claim stemming from the February Stop is appropriate and Mawson's objection is **OVERRULED**.[5]

### b. Defendants' Objections

Defendants objections are to the Report's recommendation that the court deny them summary judgment on Mawson's Fourth Amendment claims against Officer Fernandes arising from the February stop, as well as Mawson's Fourth Amendment claim against Officer Shumosic arising from the June Stop.

As to the February Stop, Defendants argue that the Report incorrectly determined that there was a dispute of fact with respect to whether there was reasonable suspicion for the stop. Defendants argue that the Report focused on two specific points in reaching this conclusion: whether Mawson ran two

---

[5] Throughout his filings, Mawson repeatedly cites the fact that he was ultimately found not guilty of the citations stemming from the June Stop. Although the Report observed that this is irrelevant to the analysis of whether the traffic stop was supported by reasonable suspicion, it bears repeating that "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

stop signs, and whether Officer Fernandes observed Mawson drive off at a high rate of speed after stopping at a stop sign. Defendants argue that Mawson did not dispute that he ran the stop signs because he did not specifically rebut Officer Fernandes's testimony that Mawson did not stop at the intersections of Swallow Street and LaGrange Street, and Vine Street and Frothingham Street. Defendants acknowledge that Mawson testified, "I stop at all stop signs," (Doc. 158-1, at 33), but argue that this is "a vague and entirely general denial," (Doc. 196, at 23), that does not create a genuine dispute as to a material fact.

The court disagrees that this testimony is insufficient, to the extent Mawson did not specifically name the above intersections, to create a genuine dispute as to whether Mawson stopped at the stop signs. This is so particularly in light of Mawson's *pro se* status and that, as the non-moving party, all inferences to be drawn from the facts must be viewed in the light most favorable to him.

Defendants additionally disagree with Judge Schwab's conclusion that Mawson disputed Officer Ferguson's testimony about driving off at a high rate of speed after stopping at a stop sign on South Main Street, arguing that the affidavit of Chris Ribaudo, which the Report cites, is insufficient because Mr.

Ribaudo did not specifically identify the time or location of his observations, nor did he specifically name the police officer or department of the police vehicle that he purportedly saw chasing Mawson.

Unsurprisingly, Defendants cite no authority for their proposition that, in order for an affidavit to be sufficient for purposes of summary judgment, the affiant must specifically provide these details. While the affidavit is certainly not legally sophisticated and plainly was not written under the guidance of an attorney, the court disagrees that it does not sufficiently dispute Officer Fernandes's testimony. In pertinent part, Mr. Ribaudo indicated that the events he observed occurred on February 16, 2016, while he was walking his dog near his house on Nafus Street. Mr. Ribaudo stated that he witnessed Mawson's truck "drive by normally" and that "Mawson did not spin his tires or speed off arratically [sic]," after which he saw "a police car speed off at a high rate of speed approx 18-second's [sic] behind [Mawson]'s truck." (Doc. 163, at 52).

The court agrees with the Report's observation that, in submitting this evidence, Mawson has effectively pointed to evidence rebutting Officer Fernandes's testimony that Mawson sped off from the stop sign and, consequently, that there is a genuine dispute as to whether Officer Fernandes

- 23 -

had reasonable suspicion for the February Stop. Accordingly, Defendants' objection is **OVERRULED**.[6]

Finally, as to the June Stop, Defendants argue that the Report erroneously found that a dispute existed as to whether Officer Shumosic had reasonable suspicion for the stop and, relatedly, that Judge Schwab erred in concluding that Officer Shumosic was not entitled to qualified immunity.

Here, again, Defendants contend that Mawson did not effectively dispute Officer Shumosic's observations because the Report did not consider Mawson's full testimony. Defendants note that, in his testimony, Mawson did not specifically state he used caution when exiting the gas station and, further, Defendants' argue that Mawson in fact admitted he did not. The portion of Mawson's testimony that Defendants cite is the following:

> I pulled in here, but I was facing this way so I could eat in peace. I seen Officer Shumosic pull over by the

---

[6] Having found that there is a genuine dispute as to whether there was reasonable suspicion for the February Stop, the court need not address Defendants' related argument that Officer Fernandes is entitled to qualified immunity. At the time of the stop, the law was clearly established that police need at least reasonable suspicion to conduct a traffic stop; however, as the report explains, whether qualified immunity applies here is dependent upon the facts as the jury finds them:  "If the facts are as Officer Fernandes asserts they are, then [he] is entitled to qualified immunity. But if the facts are as Mawson asserts, then Officer Fernandes is not entitled to qualified immunity. Only the factfinder after assessing the credibility of both [parties], can resolve the factual dispute." (Doc.191, at 40-41).

Pittston tire and just wait there. I think it's called Jack Williams Tires. And he's waiting, and I'm feeling real uncomfortable. I said, you got to be kidding me.

So I eased out of there. There's no stop sign. It's like -- more like an easement. And I looked, and I left. He turned on his lights immediately and failed to caution. There's no stop sign there, Your Honor. There is nothing saying you must come to a complete stop. It's like an easement, like a caution. I did not peel my tires. I drove up, put my turn signal on, and I took an easement up, out to the road.

**It just shows you, Your Honor -- I failed to caution leaving the -- it just shows you how they're nitpicking and they're just looking -- they have their eye on me,** Your Honor. All the people in Pittston, they're watching me back up in this corner, Your Honor. It just shows you. I mean, that's a pretty point there, pretty good point there.

I'm backed up in that corner, and they're watching me. Why would they be watching me, Your Honor, backed up in here? Just waiting for my wheels to roll, just watching – **just waiting and watching for a violation** or for something. But that just shows you how petty they're getting. I even told you in my prior one, they're getting more brazen, and they don't care.

(Doc. 158-1, at 20-21) (emphasis added). Based upon the court's review of the transcript, and in viewing the emphasized language in context and in the light most favorable to Mawson, the court disagrees that it constitutes an admission by Mawson that he did not use caution.

- 25 -

Significantly, however, Defendants also argue for the first time that under section 3355 of the Pennsylvania's Motor Vehicle Code, 75 Pa.C.S. §3344, entitled "Emerging from alley, driveway or building,"[7] the gas station qualifies as a private roadway and/or driveway and, therefore, Mawson was required to stop prior to entering the street.[8] Defendants contend that, other factual disputes aside, because the video of the stop clearly shows that

---

[7] In full, this section reads,

> Unless otherwise directed by official traffic-control devices erected in accordance with provisions of Subchapter B of Chapter 31 (relating to traffic-control devices), the driver of a vehicle emerging from an alley, building, private road or driveway within an urban district shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the alley, building entrance, private road or driveway or, in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic.

75 Pa.C.S. §3344.

[8] In their brief in support of their motion for summary judgment, Defendants argue that reasonable suspicion for the June Stop existed due to Mawson's violations of traffic regulations, "such as careless driving, failing to yield to traffic, and not wearing a safety belt" in violation of 75 Pa.C.S. §3714(a) (pertaining to careless driving); 75 Pa.C.S. §3324 (requiring drivers entering a roadway to yield the right-of-way to all approaching vehicles); and 75 Pa.C.S. §4581(a)(2)(ii)

Mawson did not stop prior to entering the street from the gas station, Officer Shumosic had reasonable suspicion to stop Mawson based upon his violation of 75 Pa.C.S. §3344.

Although other circuits have held that district courts need not consider arguments raised for the first time in objections to a magistrate judge's report and recommendation, it does not appear that the Third Circuit has addressed the issue. *See, e.g.*, *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (observing that both the Magistrates Act and Supreme Court precedent provide district courts discretion not to consider novel arguments raised in objections because "[t]o require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." (internal quotation marks omitted)); *accord Marshall v. Chater*, 75 F.3d 1421 (10th Cir.1996); *Culpit v. Whitley*, 28 F.3d 532 (5th Cir.1994).

Here, however, Defendants have not submitted new evidence or presented a new legal theory but, instead, are merely providing additional statutorily authority for an argument they made all along—to wit, that Officer Shumosic had reasonable suspicion to stop Mawson because his failure to

- 27 -

stop and/or yield when entering the roadway was a violation of the Motor Vehicle Code. Notably, in his incident report, Officer Shumosic indicated the June Stop was based upon, among other things, Mawson "exiting the parking lot without stopping or yielding to traffic." (Doc. 158-7, at 2).

Although the court agrees with the Report's conclusion that outstanding issues of fact remain as to the speed of Mawson's vehicle and whether his tires "chirped" when exiting the gas station, the entry of summary judgment in favor of Defendants is nonetheless appropriate given the plain language of 75 Pa.C.S. §3344, which requires drivers to stop when entering a roadway from private buildings or driveways, such as the gas station from which Mawson exited,[9] and because the security video clearly depicts Mawson's trucking entering the street without having done so.[10] Accordingly, the court will enter summary judgment in favor of Defendants with respect to the Fourth Amendment claim against Officer Shumosic arising from the June Stop.

---

[9] "Private road or driveway" is defined in the Pennsylvania's Motor Vehicle Code as "[a] way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons." 75 Pa.C.S. §102.

[10] In light of the court's disposition of this issue, it need not reach Defendants' related argument that Officer Shumosic is entitled to qualified immunity with regard to the June Stop.

## IV.   CONCLUSION

For the reasons set forth above, the Report is **ADOPTED in part** and **NOT ADOPTED in part**. Namely, the Report is adopted in its entirety except with regard its recommendation on Mawson's Fourth Amendment claim against Officer Shumosic arising from the June Stop. Mawson's objections to the Report, (Doc.193), are **OVERRULED**. Defendants' objections to the Report, (Doc.195), are **OVERRULED in part**. Finally, Defendants' motion for summary judgment, (Doc. 157), is **GRANTED in part** and **DENIED in part**. Specifically, summary judgment is granted in favor of Defendants on all counts except Mawson's Fourth Amendment claim against Officer Fernandes based upon the February Stop. An appropriate order will issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: October 15, 2020**
16-0400-03

- 29 -